UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIE WASHINGTON,

        Plaintiff,

v.

MATTEW FARBER et al.,

        Defendants.
_____/

Case No. 1:23-cv-1228

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court initially referred the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program. The case was not resolved through the early mediation program (*See* ECF No. 14).

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Woodard, Kinsella, and Ellison. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's retaliation claims and his Eighth Amendment claims against remaining Defendants Farber and Streit for harassment, name-calling, the loss of a prison job, and improper misconduct tickets for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Farber and Streit for making Plaintiff a target when they let it be known to other inmates that he had convictions involving criminal sexual conduct with children remain in the case.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan, and the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Defendants LRF Corrections Officer Mattew Farber and LRF Sergeant Corrections Officer Andrew Streit. Plaintiff also sues Defendants URF Corrections Officers Unknown Woodard, Unknown Kinsella, and Unknown Ellison.

**A. Allegations re LRF (Brooks)**

Plaintiff's complaint is somewhat disorganized and includes allegations regarding many non-parties to this action. Plaintiff alleges that on December 22, 2022, while he was incarcerated at LRF, he was speaking to non-party Corrections Officer McBride about an issue he was having with access to the court. Plaintiff states that the yard was just closing. Defendant Farber then began yelling on the public address system that the yard was closed and to get off base. Defendant Farber

2

was looking directly at Plaintiff[1] during this address. Officer McBride responded that she was giving Plaintiff a law library kite to address his issue. Defendant Farber then yelled at Plaintiff, stating "get the f**k of[f] the base and go lock the f**k down." (Comp., ECF No. 1, PageID.5 (asterisks added).)

The next day, Plaintiff was issued a class II misconduct ticket, which had been written by Defendant Farber, stating that Plaintiff had told Farber to "shut up." (*Id.*) Plaintiff alleges that after this, Defendant Farber directed degrading comments at Plaintiff every time Farber saw him. In addition, Defendant Farber began telling other Corrections Officers and inmates about Plaintiff's criminal charges.[2] (*Id.*) Plaintiff complained to non-party Sergeant Johnson, who assured Plaintiff that he would speak to Defendant Farber. (*Id.*, PageID.5–6.) Plaintiff asserts that Defendant Farber continued to harass Plaintiff on a daily basis, and that Plaintiff's grievance regarding the matter was rejected by the grievance coordinator. Plaintiff was subsequently moved from level 2 with 22 points, to level 4. (*Id.*, PageID.6.)

After moving to level 4, Plaintiff was again harassed by Defendant Farber. Plaintiff wrote another grievance, which was also rejected by the grievance coordinator. Two to three days later, Plaintiff was called out for law library, but when he arrived on time, non-party Corrections Officer Pearl yelled at him to leave the school building. Plaintiff presented his call-out pass, but Corrections Officer Pearl just yelled louder, causing the property officer to come into the hallway. Plaintiff then walked to the housing unit and asked the first officer he saw if he could see a sergeant,

---

[1] Plaintiff appears to be referring to himself as "Mr. W" in the body of his complaint.

[2] Plaintiff is currently serving sentences for multiple instances of criminal sexual conduct, some of which involved a victim under the age of thirteen. *See* MDOC Offender Tracking System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=239592.

3

to no avail. The next morning, Plaintiff received two misconduct tickets from Corrections Officer Pearl. Plaintiff was found guilty of the misconducts, which caused him to accrue more points. (*Id.*)

On January 15, 2023, Plaintiff was written a misconduct ticket by non-party Nurse Mark for not going to his callout. On January 23, 2023, non-party Resident Unit Manager J. Fager told Plaintiff about the ticket and asked why he had not gone to his callout. Plaintiff asked what date Fager was referring to and Resident Unit Manager Fager stated "the [sixteenth]." (*Id.*, PageID.7.) Plaintiff asserts that he did in fact go to his callout on the sixteenth but was found nonetheless guilty. Plaintiff's subsequent appeal was denied. (*Id.*)

On April 24, 2023, Plaintiff was awakened by non-party Sergeant Wakefield, who ordered Plaintiff to submit to a shakedown. Plaintiff complied and stood in the hallway. Plaintiff states that Defendant Streit, who was at the top of the stairs, subsequently began yelling for Plaintiff to "get the f**k up here." (*Id.* (asterisks added).) Plaintiff went up the stairs and Defendant Streit looked at him and said, "What you wanna do you f**kin rap[ist], do something I'll light your ass up with the pepper ball gun already on fire mode." (*Id.* (asterisks added).) Defendant Streit continued to speak loudly and degradingly to Plaintiff, discussing Plaintiff's criminal case. Defendant Streit then ordered corrections officers to take Plaintiff to the hole. (*Id.*)

Once in segregation, Plaintiff told non-party Captain Hill that Defendant Streit had been angry and verbally aggressive. Plaintiff later saw Captain Hill talking to a few of the corrections officers and pointing to Plaintiff, who was in the outside cage in segregation. Once back in the unit, Plaintiff spoke to non-parties Prison Counselor Short, Lieutenant Moore, Corrections Officer Ward, and Resident Unit Manager Boykins, and asked if they would be witnesses to the conduct of Defendant Streit. (*Id.*, PageID.8.)

4

Plaintiff states that both Defendant Streit and Defendant Farber continued to yell insults at him when they saw him and that they would invite him to engage in a fist fight. Plaintiff wrote grievances regarding this conduct, but his grievances continued to be rejected. When Plaintiff received a false misconduct ticket from Defendant Streit, he asked the hearing investigator to speak to his list of witnesses. However, the hearing investigator only spoke to one of the witnesses and Plaintiff was found guilty. Plaintiff received thirty days loss of privileges as a result. (*Id.*)

Following Plaintiff's misconduct conviction, the Resident Unit Manager and Prison Counselor advised Plaintiff that he could come out of his cell to work, which he did without incident as long as the regular staff were working. However, whenever a different corrections officer was on the unit, Plaintiff had to have the Resident Unit Manager or Prison Counselor explain that he could work. (*Id.*)

Plaintiff states that he continued to receive falsified misconduct tickets from staff and was eventually fired from his job. (*Id.*, PageID.9.) Plaintiff complained to the Resident Unit Manager and was given his job back, but non-party Corrections Officer Childers subsequently wrote Plaintiff a false misconduct ticket while non-party Sergeant Wakefield was present. Plaintiff states that Sergeant Wakefield was the individual who caused Plaintiff to be fired from his job. (*Id.*) Plaintiff spoke to the Resident Unit Manager, who asked Plaintiff why "they" had it out for him. (*Id.*) Later that day, Corrections Officer Childers wrote Plaintiff a second false misconduct ticket. Plaintiff later received a hearing on the tickets and was found not guilty on both. (*Id.*)

**B. Allegations re URF (Chippewa)**

Plaintiff was subsequently transferred to URF and on July 21, 2023, he was assigned to cell 215 in Rand Unit. (*Id.*, PageID.10.) Plaintiff's cellmate asked him what he was in prison for and Plaintiff replied that it was something from a long time ago. Plaintiff later went to the officers'

5

desk and asked to be moved to a different cell. Non-party Corrections Officer Miller laughed with the other corrections officers and told Plaintiff that only the Prison Counselor could direct a move. The next day, Plaintiff asked the Prison Counselor about being moved and was told that it was up to the corrections officers. Plaintiff subsequently asked to be moved on several occasions, to no avail. (*Id.*)

On August 24, 2023, Plaintiff told Defendant Woodard that he had a conflict with his cellmate. Defendant Woodard told Plaintiff that he did not have time for his "shit," and to go get his medication. (*Id.*) As Plaintiff returned to the unit, he was told to sit in front of the officers' desk. However, a few minutes later Defendant Ellison approached Plaintiff and ordered him to return to his cell. Plaintiff told Defendant Ellison that Defendant Woodard had told him to sit there. Defendant Ellison looked at Defendants Woodard and Kinsella and then told Plaintiff that he was giving him a direct order to return to his cell. (*Id.*)

Once Plaintiff arrived back at his cell, he packed up his belongings. Plaintiff's cellmate left his cell and two minutes later, another inmate entered Plaintiff's cell and hit him in the head with a sock containing a lock. Plaintiff states that his attacker, an inmate called Duff, struck him in the head two more times and that blood was flowing down his face as he tried to grab the hand with the lock. Plaintiff then reacted to defend himself, and as he was on top of his attacker, Defendants Kinsella and Ellison were outside the door laughing. At this point, Defendant Kinsella sprayed Plaintiff in the face with pepper spray. (*Id.*, PageID.11.)

While in segregation following the incident, Plaintiff asked to be placed in protective custody because he believed that the corrections officers had discussed details of Plaintiff's criminal case with other inmates. (*Id.*) Plaintiff's request was denied and he received a misconduct for disobeying a direct order when he refused to leave segregation. Plaintiff was found guilty of

the misconduct, served his sanctions, and was released back into the general population in Rand Unit on October 1, 2023. (*Id.*)

Plaintiff states that his new cellmate would not accept him and that he believed it was because of his underlying criminal case. Plaintiff then went to the officers' desk and asked to be placed in protective custody because he feared for his life. Plaintiff was ordered to sit in the day room to the right of the officers' desk and as he was going towards the door, the other inmates were going to the yard and Defendant Woodard said, "[T]his motha-f**ker wants to rape kids but now he is afear for his life." (*Id.* (asterisks added).)

Plaintiff was returned to segregation. (*Id.*, PageID.12.) Plaintiff states that as of October 6, 2023, he had been insulted and threatened with stabbing and death by an inmate on the same "rock" as Plaintiff. (*Id.*) Plaintiff believes that he has been targeted by staff at LRF and URF for false tickets, transfer, and at URF, for threats on his life. Plaintiff asserts that this has caused him to suffer from anxiety and stress on his heart, and that he has health issues and heart stents. (*Id.*) Plaintiff states that the harassment and tickets have continued and that his request to be transferred was denied by non-party Prison Counselor Davis. (*Id.*)

Plaintiff asserts that Defendants' conduct constitutes deliberate indifference and cruel and unusual punishment. Plaintiff seeks compensatory and punitive damages.

**II.     Joinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

7

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–137 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

9

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Defendants Farber and Streit are the first Defendants named in the action, and Plaintiff's claims against Farber and Streit arose while Plaintiff was confined at LRF between December of 2022 and July of 2023. Plaintiff's claims Defendants Woodard, Kinsella, and Ellison did not arise until after he was transferred to URF on July 21, 2023. Plaintiff makes no allegations indicating that his claims against Defendants Woodard, Kinsella, and Ellison are transactionally related to his claim against Defendants Farber and Streit.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws

§ 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges conduct by URF Defendants Woodard, Kinsella, and Ellison that occurred after July 21, 2023. Plaintiff has sufficient time in his limitations period to file a new complaint

12

against Defendants Woodard, Kinsella, and Ellison. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Woodard, Kinsella, and Ellison because they are misjoined. The Court will dismiss Plaintiff's claims against Defendants Woodard, Kinsella, and Ellison without prejudice to the institution of a new, separate lawsuit(s).[3]

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

---

[3] If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff asserts that Defendants Farber and Streit violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

14

of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

With respect to Plaintiff's assertions of harassment, name-calling, the loss of a prison job, and misconduct tickets by Defendants Farber and Streit, Plaintiff fails to allege facts showing that this conduct resulted in the denial of the "minimal civilized measure of life's necessities," or deprived Plaintiff of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 347–48 (citation omitted). Therefore, this conduct does rise to the level of an Eighth Amendment violation.

However, with respect to Plaintiff's claim that Defendants Farber and Streit let it be known to other inmates that he had convictions involving criminal sexual conduct with children in order to make him a target, the Court notes that inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

Labeling an inmate as set forth above may constitute deliberate indifference to the inmate's safety. *See, e.g.*, *Comstock v. McCrary*, 273 F.3d 693, 699, n.2 (6th Cir. 2001) (acknowledging that being labeled a snitch could make the inmate a target for prison attacks); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *see also Odom v. McKenzie*, No. 12-CV-79-HRW, 2012 WL 6214367, at *3 (E.D. Ky. Dec. 13, 2012) (citations omitted). "It does not matter whether the risk is caused by the actions of prison officials or may come at the hands of other inmates. If an inmate is believed to be a 'snitch' by other inmates, he or she faces a substantial risk of assault by other inmates." *Spotts v. Hock*, No. CIV. 10-353-GFVT, 2011 WL 676942, at *2–3 (E.D. Ky. Feb. 16, 2011) (internal citation omitted). However, in at least one published opinion, the Sixth Circuit has held that to state a claim for deliberate indifference under the Eighth Amendment in such a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled a snitch. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim

17

that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Yaklich*, 148 F.3d at 600–01 (concluding that plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury); *White v. Trayser*, No. 10-CV-11397, 2011 U.S. Dist. LEXIS 31434, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (holding that plaintiff failed to state an Eighth Amendment claim where he alleged that defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury); *Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009 U.S. Dist. LEXIS 108443, at *25, 2009 WL 4250027, at *12 (E.D. Mich. Nov. 19, 2009) ("[A]n Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury.").

As noted above, Plaintiff claims that he was assaulted by another inmate because of the nature of his criminal convictions. Therefore, Plaintiff's Eighth Amendment claims against Defendants Farber and Streit for making this information available to other inmates may not be dismissed on initial review.

### B. Retaliation

In his complaint, Plaintiff states that Defendants engaged in "retaliation." (ECF No. , PageID.4.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that Defendants Farber and Streit took adverse actions against him by harassing him, subjecting him to misconduct tickets, and making other prisoners aware of his criminal convictions. However, Plaintiff fails to allege any facts showing that Defendants Farber and Streit were motivated by a desire to retaliate against him for engaging in protected conduct. Instead, based on the allegations in Plaintiff's complaint, it appears that the behavior of Defendants Farber and Streit toward Plaintiff was motivated by their knowledge of the nature of his criminal convictions.

"[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action. Therefore, Plaintiff's retaliation claims against Defendants Farber and Streit will be dismissed.

## Conclusion

For the foregoing reasons, the Court will drop as misjoined Woodard, Kinsella, and Ellison. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. Additionally, having conducted the review required by the PLRA, the Court will dismiss Plaintiff's

retaliation claims and his Eighth Amendment claims against Defendants Farber and Streit for harassment, name-calling, the loss of a prison job, and misconduct tickets for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Farber and Streit for making Plaintiff a target when they let it be known to other inmates that he had convictions involving criminal sexual conduct with children remain in the case.

An order consistent with this opinion will be entered.

Dated:   September 18, 2024                         /s/ Robert J. Jonker
                                                    Robert J. Jonker
                                                    United States District Judge